LENARD L. POLITTE, M.D., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4012–92.        Filed October 27, 1993.

*David L. Knight,* for petitioner.
*Thomas C. Pliske,* for respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the short period from September 1, 1988, to December 31, 1988, in the amount of $41,314. The sole issue for decision is the proper application

of the annualization provisions of section 443[1] to partnership distributions to petitioner.

All of the facts have been stipulated by the parties and are so found. The stipulated facts and accompanying exhibits are incorporated herein by reference.

Petitioner had a mailing address in Columbia, Missouri, at the time it filed its petition herein and filed a return on the cash basis for the short period on September 13, 1989. It had previously filed its returns on the basis of a fiscal year ending August 31.

Petitioner was a general partner in the medical practice of Columbia Cardiology Associates (partnership). The partnership maintained its books and records for tax purposes on the basis of a calendar year ending December 31.

During 1988, petitioner was a personal service corporation required by section 441(i) (enacted as sec. 806(c)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2364) and section 444 to change its tax accounting period from a fiscal year ending August 31 to a calendar year ending December 31. Because of the change in accounting periods, petitioner was required to file a short-period tax return and annualize the income for that period under section 443 (see *infra* p. 361).

On that return petitioner annualized its taxable income as follows:

| Income | Short period 9/1/88 - 12/31/88 | Annualization factor | Annualization amount |
|---|---|---|---|
| Clinic fees | $168,053 | 12/4 | $504,159 |
| Miscellaneous | 49 | 12/4 | 147 |
| Columbia Cardiology Associates: | | | |
| Operating loss | - - - | - - - | (3,176) |
| Guaranteed payments | - - - | - - - | 202,509 |
| Interest | - - - | - - - | 955 |
| Total income | - - - | - - - | 704,594 |
| Total expenses | 250,026 | 12/4 | 750,078 |
| Annualized income (loss) | - - - | - - - | (45,484) |

[1] All statutory references are to the Internal Revenue Code in effect for the periods in issue. All Rules references are to the Tax Court Rules of Practice and Procedure.

Respondent determined petitioner's annualized income as follows:

| Income | Short period 9/1/88 - 12/31/88 | Annualization factor | Annualization amount |
|---|---|---|---|
| Clinic fees | $168,065 | 12/4 | $504,195 |
| Miscellaneous | 49 | 12/4 | 147 |
| Columbia Cardiology Associates: | | | |
| Operating loss | (3,176) | 12/4 | (9,528) |
| Guaranteed payments | 202,509 | 12/4 | 607,527 |
| Interest | 955 | 12/4 | 2,865 |
| Total income | - - - | - - - | 1,105,206 |
| Total expenses (per return—$250,026 less adjustments 3,134) | 246,892 | 12/4 | 740,676 |
| Total | - - - | - - - | 364,530 |

At issue is whether petitioner was required to annualize the partnership items. Section 443(b)(1) provides as follows for the annualization of income where a return is filed for a short period:

(1) GENERAL RULE.—* * * the taxable income for the short period shall be placed on an annual basis by multiplying the modified taxable income for such short period by 12, dividing the result by the number of months in the short period. The tax shall be the same part of the tax computed on the annual basis as the number of months in the short period is of 12 months.[2]

Petitioner's principal position rests on the proposition that, since the items attributable to the partnership represent the partnership's activities over a 12-month period ending December 31, 1988, the requirement of annualization is satisfied by simply including in gross income the amounts shown as distributions on the partnership's tax return. According to petitioner, requiring it to annualize the 12-month financial consequences of the partnership in effect taxes 36 months of income in violation of the regulations under section 441, which provide that a taxable period may not exceed 1 year. Sec. 1.441-1T, Temporary Income Tax Regs., 52 Fed. Reg. 48524 (Dec. 23, 1987).

---

[2] Sec. 443(b)(3) defines "modified taxable income" as follows:

For purposes of this subsection the term "modified taxable income" means, with respect to any period, the gross income for such period minus the deductions allowed by this chapter for such period (but, in the case of a short period, only the adjusted amount of the deductions for personal exemptions).

Respondent's position is that sections 706 and 707 require a partner to include in gross income the distributions of the partnership as of the close of the taxable year of the partnership ending with or within the partner's taxable year, in this case the distributions of the partnership for its taxable year ending December 31, 1988. As a result, respondent asserts that all the distributions in question must be annualized under section 443(b). For the reasons hereinafter stated, we hold for respondent.

Section 706(a) provides:

SEC. 706(a). YEAR IN WHICH PARTNERSHIP INCOME IS INCLUDIBLE.—In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 and section 707(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner.

The statutory mandate is reflected as follows in section 1.706-1(a), Income Tax Regs.:

(a) Year in which partnership income is includible.—(1) In computing his taxable income for a taxable year, a partner is required to include his distributive share of partnership items set forth in section 702 for any partnership year ending within or with his taxable year. *A partner shall also include in his taxable income for a taxable year "guaranteed payments" under section 707(c) which are made to him in a partnership taxable year ending within or with his taxable year. * * * [Emphasis added.]*

Section 707(c) provides:

SEC. 707(c). GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

This statutory mandate is reflected as follows in section 1.707-1(c), Income Tax Regs.:

(c) Guaranteed payments.—Payments made by a partnership to a partner for services or for the use of capital are considered as made to a person who is not a partner, to the extent such payments are determined without regard to the income of the partnership. *However, a partner must include such payments as ordinary income for his taxable year within or with which ends the partnership taxable year in which the partnership deducted such payments as paid or accrued under its method of accounting.* See sec-

tion 706(a) and paragraph (a) of section 1.706-1. Guaranteed payments are considered as made to one who is not a member of the partnership, only for the purposes of section 61(a) (relating to gross income) and 162(a) (relating to trade or business expenses). * * * [Emphasis added.]

Petitioner's argument is directed primarily to the guaranteed payments, which appear to have been made as compensation for services furnished by petitioner. On this basis, petitioner contends, in the alternative, that, even if we accept respondent's position as to the necessity for annualization of the partnership items in question, the guaranteed payment item should be limited to the amount of the guaranteed payments actually received by petitioner during the short period.[3]

The provision for annualization of income, where a return for a short period is made as a result of a change in the taxpayer's accounting period, was first enacted as section 47(c)(1) of the Internal Revenue Code of 1939 by section 135 of the Revenue Act of 1942, ch. 619, tit. I, 56 Stat. 798, 834. Insofar as the instant case is concerned, that provision has remained unchanged since that time. At the time of such enactment, the House Ways and Means Committee and the Senate Finance Committee recognized that the annualization process could produce undesirable results in cases where the income was not received uniformly over a 12-month period. See H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 439-440; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 583-584. Accordingly, section 47(c) was added to provide a method by which a taxpayer could, by application to respondent, reduce the tax produced by annualization to the amount of tax based on the actual net income for the 12-month period beginning with the first day of the short period. This provision has also remained in effect with changes not material to the instant case since 1942 and is now contained in section 443(b)(2). There is no indication in the record herein that petitioner ever sought to take advantage of this provision.

The impact of these provisions has been considered on several occasions involving partnership distributions, including guaranteed payments, and the courts have uniformly held

---

[3] The stipulation of facts does not set forth the amount of such payments, but petitioner has utilized the figure of $79,972 on brief, and respondent has interposed no objection.

that the amount to be annualized is the entire distributive share of the taxpayer partner for the taxable year of the partnership ending within or with the short period, despite the high tax that can result. *Spatola v. Commissioner,* 43 B.T.A. 1110 (1941); *Israel v. Commissioner,* a Memorandum Opinion of this Court dated June 9, 1942; see *Pratt v. Commissioner,* 64 T.C. 203, 213 (1975), revd. on this issue on other grounds 550 F.2d 1023, 1027 (5th Cir. 1977); *Gaines v. Commissioner,* T.C. Memo. 1982-731; cf. *Cohan v. Commissioner,* 39 F.2d 540, 544-546 (2d Cir. 1930).[4] Moreover, we note that at the time of enactment of section 706, the Senate stated that the inclusion of the reference in that section to section 707(c) was:

in order to make clear that payments made to a partner for services or for the use of capital are includible in his income at the same time as his distributive share of partnership income for the partnership year when the payments are made or accrued, namely, in the taxable year of the partner with or within which the partnership year ends. [S. Rept. 1622, 83d Cong., 2d Sess. 385 (1954).]

See *Miller v. Commissioner,* 52 T.C. 752, 762 (1969).

Petitioner's argument that respondent taxes 36 months of income is without merit. The annualization by respondent simply has the effect of determining the applicable tax rate, i.e., bracket, but the tax itself is prorated based on the number of months in the short period. Cf. *Cohan v. Commissioner, supra* at 545. Indeed, if petitioner's position herein were correct, the guaranteed payments it received from the partnership during the period January 1, 1988, to August 31, 1988, would escape tax since petitioner would not have been required to include those payments in its return for that period in view of the fact that the taxable year of the partnership had not ended.

The hard fact is that the plain language of section 443(b)(1) and (3) requires annualization of all items includable in a taxpayer's gross income for the short period. Distributions to a partner are not, by virtue of sections 706(a) and 707(c) and the regulations thereunder, considered income until the last day of the partnership's taxable year ending with or within that short period. Although section

---

[4] See also *Jolin v. Commissioner,* T.C. Memo. 1985-287, affd. without published opinion 869 F.2d 1491 (6th Cir. 1989).

707(c) defines partnership compensation for services to the partnership as ordinary income under section 61, similar to a nonpartner employee, section 706 and the regulations under sections 706 and 707 require petitioner to recognize this ordinary income, not when actually distributed, but at the end of the partnership tax year. Petitioner's alternative argument that annualization should apply only to the guaranteed payments received during the short period is indefensible.

In sum, based on the language of the applicable statutory provisions, the legislative history, and the decided cases, we sustain respondent's position in respect of petitioner's annualization of the partnership items.

In order to take into account the concessions of the parties on other issues,

*Decision will be entered under Rule 155.*